UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THADDEUS VONDERRICK BICKHAM,

      Petitioner,

v.                                              Case No. 1:06-CV-240
                                              (Criminal Case No. 1:02-CR-263)

UNITED STATES OF AMERICA,

                                              HON. GORDON J. QUIST

      Respondent.

_____/

**OPINION**

This Court has before it Thaddeus Vonderrick Bickham's ("Petitioner") Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody. After reviewing the pleadings and affidavits, the Court concludes that Petitioner is not entitled to relief.

**I.    Procedural History.**

On January 22, 2003, Petitioner was convicted by a jury in this Court of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) (Count 1), possession with intent to distribute an unspecified quantity of marijuana in violation of 21 U.S.C. § 841(a)(1) and §841(b)(1)(D) (Count 3), and possession of a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4). In addition to the above-described offenses, Petitioner was also charged in the superseding indictment with distributing and possessing with intent to distribute more than 50 grams of crack cocaine. After the evidence was presented, this Court granted a judgment of acquittal as to the cocaine count only.

On July 29, 2003, this Court sentenced Petitioner to 112 months imprisonment, and Judgment was entered on July 30, 2003. Petitioner filed an appeal with the Court of Appeals for the Sixth Circuit, which affirmed the conviction and sentence on December 16, 2004. *See United States*

*v. Bickham,* No. 03-2011 (6th Cir. 2004). A mandate was entered on April 25, 2005.

On April 10, 2006, Petitioner filed this timely motion under 28 U.S.C. § 2255.

## II.     Motions to Amend/Correct Reply and Supplement § 2255 Motion Granted

On October 2, 2006, and again on November 2, 2006, Petitioner filed motions to amend/correct his reply brief (docket nos. 14 & 15). Both motions will be granted. On January 29, 2007, Petitioner filed a motion to supplement his 2255 motion (docket no. 17), essentially informing the Court of another case. This motion will also be granted.

## III.    Ineffective Assistance of Counsel Claims are Dismissed

Petitioner alleges that his trial attorney, Fred Johnson, provided ineffective assistance of counsel for three reasons: (1) his counsel failed to file a motion to suppress based on the invalidity of the search warrant; (2) his attorney failed to timely negotiate a guilty plea; and (3) his attorney encouraged him to admit that he possessed a gun as charged in 18 U.S.C. § 924(c).

The United States Court of Appeals for the Sixth Circuit repeated the test for ineffective assistance of counsel:

> A two-prong test establishes ineffective assistance of counsel: 1) the defendant must show that his counsel's performance was deficient; and 2) prejudice must have resulted to counsel's defendant from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The second prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.*
>
> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.
>
> To establish prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

2

> confidence in the outcome." *Id.* at 694, 104 S. Ct. 2052. To determine if Kinnard was prejudiced by his attorney's performance, it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L.Ed.2d 180 (1993).

*Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002).

The standard under the *Strickland* deficiency prong is whether Petitioner's counsel provided "reasonably effective assistance," and "whether counsel's conduct <u>so undermined</u> the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686-87, 104 S. Ct. at 2064 (emphasis added). There is a presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, to prevail, Petitioner must meet the burden of showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688-89, 104 S. Ct. at 2064. The Court must also not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Id.* at 690, 104 S. Ct. at 2065-66.

This Court does not find that Petitioner has met this burden on any of his three claims. Therefore, these claims will be dismissed.

### A. Counsel Was Not Ineffective for Not Filing a Motion to Suppress

The test for establishing ineffective assistance of counsel for failure to file a motion to suppress evidence is based on *Strickland* and is set forth in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574 (1986):

> In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S., at 688, 104 S.Ct., at 2064, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*., at 694, 104 S.Ct., at 2068. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the

> defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values.
>
> \* \* \* \*
>
> As is obvious, *Strickland's* standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

*Kimmelman,* 477 U.S. at 375, 382; 106 S. Ct. at 2582-83, 2586-87.

Thus, Petitioner must show both that his trial attorney was "objectively unreasonable" in not filing a motion to suppress, and that, had he filed a motion to suppress, there is a reasonable probability that the verdict would have been different. Here, Petitioner has failed to meet both prongs.

First, there is no showing that Petitioner was prejudiced by the decision not to file the motion. In a nutshell, any motion to suppress would have been denied by the Court, and the evidence would have been admitted at trial. Petitioner contends that the search of the residence was unlawful because Officer Galloway's affidavit contained insufficient information to establish probable cause. Specifically, Petitioner alleges that Officer Galloway failed to identify and establish the reliability of the confidential informant. In a motion to suppress, the defendant bears the burden of establishing that the affidavit was insufficient to support the issuance of the warrant. *See United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991).

To meet the probable cause requirement, an affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises

4

to be searched." *Blakeney*, 942 F.2d at 1025. However, probable cause does require a "substantial basis" for concluding that evidence of a crime will be found at the location to be searched. *See id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). Both the Supreme Court and the Sixth Circuit have emphasized that the issuing court's probable cause determination is entitled to "great deference" by reviewing courts. *United States v. Leon*, 468 U.S. 897, 914, 104 S. Ct. 3405, 3416 (1984); *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986). A magistrate's determination of probable cause should be upheld so long as the magistrate had a "substantial basis" for concluding that the search would lead to evidence of a crime. *Pelham*, 801 F.2d at 877-78.

The determination of the sufficiency of an affidavit is the "totality of the circumstances" test set forth by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). The Court stated in that case that

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and 'basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238, 103 S. Ct. at 2332.

In her affidavit in support of the warrant, Officer Galloway described her training and experience in drug trafficking investigations and drug identification. (Warrant Aff. at 1-2.) She also set forth the information provided by the confidential informant, which included the full name of Petitioner, a description of the Petitioner, and information regarding Petitioner's possession and sale of cocaine. (*Id.* at 2.) Officer Galloway also specified the exact address where the search would occur. (*Id.* at 1). Officer Galloway described the results of her investigation, which confirmed many of the details provided by the confidential informant. She also established the

5

reliability of the confidential informant.

> In this regard your affiant met with a reliable and credible informant who indicated from personal knowledge that cocaine could be purchased at the above described premises. This informant from personal knowledge is familiar with the characteristics of cocaine, the manner in which cocaine is used and sold in the community. When your affiant met with the informant, the informant directed your affiant to the above described premise. The informant had been at the above described premises within the last 36 hours and observed a quantity of cocaine being sold there. The cocaine as described by the informant is being sold for various amounts of US currency.
>
> The cocaine is easily concealed on or about the person. When the informant left the premise, there were additional amounts of cocaine on the premise being offered for sale. The person(s) selling the cocaine is/are described as: 1) Thaddeus "Biggs" Bickham, B/M, 08/01/1972, 6'2", 300 lbs.
>
> Your affiant has known the informant at least six months and has made at least 13 controlled purchases of controlled substances. All of these controlled purchases tested positive for the controlled substance purchased. The informant has supplied information on at least 4 drug traffickers in the community said information having been verified by your affiant through police records, personal observations, other police officers, and other reliable informants. The said informant has supplied information for the issuance of at least 3 prior search warrants.

(*Id.* at 2.)

The Court concludes that the information set forth in the affidavit contained sufficient detail to establish probable cause, even though it was based, in part, upon information provided by a confidential informant. *See United States v. Johnson*, 351 F.3d 254, 259-60 (6th Cir. 2003) ("an affidavit need not name a confidential informant, but merely provide indicia of reliability"); *McCray v. Illinois*, 386 U.S. 300, 304, 87 S.Ct. 1056, 1059 (1967). Further, had a motion to suppress been filed, Officer Galloway's testimony would have reinforced the validity of the search warrant. At the sentencing hearing, Officer Galloway testified:

> [T]hroughout my investigation, two months prior to the search warrant, I had been watching the residence and just trying to collect some knowledge on my own as to what he was doing. And the informant had told me that purchases were made out of that residence, not controlled purchases through me, but for the informant's use. And the informant notified me the night before I did the search warrant that the

6

> informant had been in the residence and saw cocaine and a gun and that it would be a good time to conduct a search warrant, because there was a large quantity of cocaine in the house.

(Sentencing Tr. at 7.) Furthermore, although the Court stated that it was "very skeptical of confidential informants," it also stated that, "That obviously is good enough to get a search warrant." (*Id.* at 22.) Thus, any motion to suppress would most likely have been denied.

Finally, under *Strickland*, Petitioner's trial attorney's decision not to file the motion to suppress was not "objectively unreasonable" because any motion to suppress would have been without merit. Attorney Fred Johnson explains why he did not pursue the motion:

> When we met, Mr. Bickham informed me that he was questioning the validity of the search warrant in his case. I informed him that if hired, I would examine the warrant and report to him whether or not I could find any good faith basis to challenge the search. I did so. I reported to him that I felt that under current law, the warrant was adequate and that I would not be bringing a motion to contest it. I further informed him that I would revisit the issue if there were developments that might reverse my assessment. Mr. Bickham was <u>not</u> surprised when I informed the Court that I was not intending to bring a motion.

(Johnson Aff. at 2.) Therefore, counsel was not deficient, and this claim will be dismissed.

**B.     Counsel Was Not Ineffective for Failing to Negotiate a Plea Agreement**

Petitioner claims that he was denied effective assistance of counsel because defense counsel did not negotiate a plea agreement. Petitioner implies that he would have pled guilty had he been presented with a plea bargain. Petitioner, however, does not present evidence that the government would have offered a plea to less than all of the charges against Petitioner. Without proof that the government was willing to plea bargain, this Court cannot find that Petitioner's counsel was deficient in his representation of Petitioner or that such negotiations would have resulted in a different outcome for Petitioner.

Furthermore, in his affidavit, Attorney Johnson states that "Mr. Bickham had rejected the plea offer." (Johnson Aff. at 4.) In fact, prior to trial, this Court gave Mr. Bickham the opportunity

7

to plead guilty, but after much back-and-forth, be declined the opportunity.

> THE COURT:  Mr. Bickham, is it your desire – the jury is waiting downstairs, and we can go forward with this trial, no problem. Is it your desire, sir, to plead guilty to the counts alleged against you?
> THE DEFENDANT:  Yes, sir.
> THE COURT:  Are you sure about that?
> (Long pause.)
> THE COURT:  Mr. Bickham?
> THE DEFENDANT:  I'm having a real tough time, Your Honor, for a second.

(Trial Tr. At 4.)

The Court then discussed the possible prison sentence faced by Petitioner, and began the plea proceeding. Upon Petitioner's hesitation, the Court gave him thirty minutes to talk with counsel. After consulting with Mr. Johnson, Petitioner returned to the courtroom and indicated that he wanted to go through with pleading guilty. However, once the Court, again, began the plea proceeding, Mr. Bickham interrupted and said:

> THE DEFENDANT:  Excuse me, your honor.
> THE COURT:  Yes?
> THE DEFENDANT:  I want to withdraw.
> THE COURT:  You want to try it?
> THE DEFENDANT:  Yeah.
> THE COURT:  All right. Bring in the jury.

(Trial Tr. At 18.) Thus, Petitioner has failed to show that his counsel was deficient or that he was prejudiced by the lack of a plea agreement. In fact, it appears that Petitioner rejected any possibility of an agreement that may have existed. Therefore, this claim will be dismissed.

**C.    Counsel Was Not Ineffective for Adopting a Strategy for Petitioner to Admit to Possessing a Gun to Protect His Family**

Lastly, Petitioner claims that his counsel was deficient in encouraging Petitioner to admit to the possession of a gun charge under 18 U.S.C. § 924(c). This statement is not accurate. Petitioner faced two gun charges: Count 1 (felon in possession of a firearm in violation of 18 U.S.C.

8

§§ 922(g)(1) and 924(a)(2) (Count 1)) and Count 4 (possession of a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i)). The penalties under Court 4 were greater than those of Count 1. So, strategically, Attorney Johnson advised Petitioner to admit to possessing a gun to protect his family (admitting Count 1) to hopefully avoid being found guilty of Count 4. In his affidavit, Attorney Johnson explains the strategy:

> During our preparation for trial, Mr Bickham and I discuss[ed] strategy. As I recall, the evidence was overwhelming on one or more of the allegations against him. For instance, he was sitting on top of his gun when the police broke in. Therefore, we discussed whether it was wise to deny all and then risk having the jury believe nothing we said, or if it were better to concede those points we could not win, and thereby garner credibility with the jury on those counts we had a chance of successfully contesting. My advice was to choose the latter option. . . . [O]ur strategy was agreed to by both of us before trial.

(Johnson Aff. at 7.)

Thus, the strategy was not to admit to the § 924(c) charge (Count 4), but rather to defeat it. Although the strategy ultimately failed and Petitioner was found guilty of both Count 1 and Count 4, his counsel was not deficient for suggesting the strategy. It was reasonable given the multiple serious charges faced by the Petitioner. Furthermore, Petitioner has failed to establish that he was prejudiced by counsel's advice, in that he has failed to show that he would have been found not guilty of Count 4 had he not admitted to possessing the weapon. In fact, there was substantial evidence other than Petitioner's testimony supporting the finding of guilt, and there is a great probability that Petitioner would have been found guilty of Count 4 regardless of his testimony. Therefore, this claim must be dismissed.

### IV. No Certificate of Appealability.

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

9

Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

## Conclusion

For these reasons, Petitioner's motions to amend/correct his reply brief (docket nos. 14 & 15) will be GRANTED. Petitioner's motion to supplement his 2255 motion (docket no. 17) will be GRANTED. Petitioner's § 2255 Motion (docket no. 1) will be DISMISSED. In addition, a certificate of appealability will be DENIED as to each issue raised by Petitioner because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate order will issue.


Dated: September 4, 2007                     /s/ Gordon J. Quist
                                             GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE